IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICK LEWIS HUBBARD                                                                   PLAINTIFF

v.                              Civil No. 5:23-cv-05168-TLB-MEF

OFFICER SERATT, Fayetteville Police Department
(FPD); DETECTIVE BRYAN LINDABURY, FPD;
and OFFICER SINIAWA, FPD                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Patrick L. Hubbard ("Hubbard"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. Hubbard proceeds *pro se* and *in forma pauperis*. The claims asserted in this case arose when Hubbard was arrested on August 14, 2023, by the Defendants, all members of the Fayetteville Police Department ("FPD"). The arrest warrant was issued based on events occurring on October 6, 2016. Hubbard maintains his constitutional rights were violated when: (1) Defendant Lindabury executed a false probable cause affidavit for the issuance of an arrest warrant; (2) he was arrested based on the invalid warrant; (3) Defendant Siniawa used excessive force in applying handcuffs; and (4) Defendant Seratt did not loosen the handcuffs when she was transporting Hubbard to the Washington County Detention Center ("WCDC").

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on the Motion for Summary Judgment filed by the Defendants (ECF Nos. 27-29) and Hubbard's Response (ECF No. 32). The

1

Motion is ready for decision.

## I.     BACKGROUND

On October 6, 2016, Officer B. Smith was dispatched in response to a report of a residential burglary at an apartment occupied by Brandon and Ashley Wilson. (ECF No. 27-3 at 16).[1] When Ashley awoke at approximately 9:30 a.m., she noticed the living room light on, an empty orange juice container in the living room, and her wallet had been gone through and all its contents were missing including cash, her driver's license, and credit cards. *Id.* Ashley discovered the refrigerator door was partly open and her car keys were gone. *Id.* Ashley went to the parking lot and saw that her car, a 2011 black Mazda 3, was gone. *Id.* Ashley supplied the officer with the car's license number, 080WZP, and vehicle identification number. The couple had not heard anything unusual during the night but mentioned they had slept soundly. *Id.* There was no sign of forced entry. *Id.*

Later the same day, a commercial burglary of a laundry mat located in Rogers, Arkansas, and it was reported by its owner, Satnam Singh ("Singh"), to Detective Eddie Weimer of the Rogers Police Department. (ECF No. 27-6 at 7-8). Cash in the amount of $546 contained in a cash bag was stolen. *Id.* During the robbery, Singh scuffled with the robber in an attempt to retrieve the cash bag. *Id.* at 2. Singh described the robber as a black male driving a black Mazda with the license plate number, 080WZP—the Wilson's car. *Id*. He also identified Hubbard from a photo array. *Id.* at 3. Singh had video surveillance footage showing Hubbard and the Mazda. *Id.* Detective Weimer was notified that Hubbard was taken into custody at 0004 hours on October

---

[1] All references are to the document and page numbers in the Court's electronic filing database ("CM/ECF").

2

7, 2016, in Pope County, Arkansas. *Id.* Detective Weimer indicates that at the time of his arrest Hubbard "was driving the stolen black 2011 Mazda 3, Arkansas vehicle license 080WZP." *Id.*

Hubbard was charged by Criminal Information filed on December 12, 2016, with commercial burglary, theft of property, battery in the third degree, and robbery. (ECF No. 27-6 at 6-7). On October 3, 2017, an Amended Plea Agreement and Order was filed showing Hubbard agreed to plead guilty to commercial burglary, theft of property, and filing a false police report (arising from a separate criminal case), and the State agreed to dismiss the robbery claim. (ECF No. 27-6 at 9-10). The prosecuting attorney agreed to recommend a sentence of seven years in the Arkansas Division of Correction with an additional six years suspended. *Id.* at 9. The sentence was to run *nunc pro tunc* to October 6, 2016, except on the filing of the false police report charge, which was to begin to run on August 17, 2017, the date of the plea. *Id.* The agreement was signed by Hubbard, his public defender, and the deputy prosecuting attorney. *Id.* at 10. On October 3, 2017, an Amended Sentencing Order was filed with respect to these charges which included language making the sentence run *nunc pro tunc* to October 6, 2016. (ECF No. 22 at 2-5).

By affidavit, Defendant Lindabury asserts that on October 7, 2016, the Wilson's vehicle was located by the Russellville Police Department.[2] (ECF No. 27-3 at 3). Defendant Lindabury asserts that Hubbard was in possession of the vehicle and the police recovered from the vehicle Ashley's identification, credit, and debit cards.[3] *Id.* According to Defendant Lindabury,

---

[2] No Russellville Police Department reports were submitted to the Court as exhibits.
[3] On October 7, 2016, Officer M. Kamilos completed a supplemental report in the Wilson robbery case indicating the vehicle recovery had been made by the Russellville Police Department. (ECF No. 27-3 at 17). The vehicle contents included a large amount of cash, the original car key, and several bank and debit cards. *Id.* The report further indicates Hubbard and another suspect were

3

Hubbard was arrested and charged with theft by receiving "as well as other charges not related to the Fayetteville case."

    Defendant Lindabury also asserts that:

> On December 18, 2018, an independent lab did an analysis on the swabs taken from the orange juice bottle found at the Wilsons' apartment. The results identified a DNA profile of a male contributor. The results were then returned to the Arkansas Crime Lab for further analysis which identified Patrick Lewis Hubbard as the main contributor of the DNA profile from the orange [juice] bottle.

*Id.* at 3, 15.

    On June 19, 2019, Defendant Lindabury completed a case summary and an affidavit for arrest requesting the issuance of an arrest warrant based on the evidence showing Hubbard's involvement in the residential burglary of the Wilson's apartment on October 6, 2016. (ECF No. 27-3 at 3, 6-10). The arrest warrant was issued on June 28, 2019. *Id.* at 3, 11-12.

    On August 13, 2023, the FPD received a tip that Hubbard was in the area and was planning on staying in a "cheap motel." (ECF No. 27-3 at 3). The following day, it was determined that Hubbard was staying at a Motel 6 in Fayetteville. *Id.* Hubbard was then located and arrested. *Id.* at 3-4. The warrant return was filed on August 14, 2023. *Id.* at 13.

    At his deposition, Hubbard testified Defendant Lindabury sought a false arrest warrant for the residential burglary and theft of property that occurred on October 6, 2016, in Fayetteville, Arkansas. (ECF No. 27-1 at 11). Hubbard maintains Defendant Lindabury's entire affidavit for the arrest warrant was false. *Id.* at 17. Hubbard testified he was arrested on October 6th in Rogers, Arkansas, on the "street somewhere" for the robbery of the laundromat and taken to the Benton County Detention Center ("BCDC"). *Id.* at 11, 14-15. He could not recall when the

---

arrested. *Id.* Officer Kamilos advised the Wilson's their vehicle had been recovered.

robbery of the laundromat occurred. *Id.* at 11.

Hubbard denies he was arrested in Pope County at a few minutes after midnight on October 7, 2016. (ECF No. 27-1 at 13, 15-16). Additionally, he denies he was driving a stolen black 2011 Mazda 3, vehicle license 080WZP, when he was arrested. *Id.* at 14. In fact, he denies he was involved in the Fayetteville residential burglary or was ever in the Mazda. *Id.* at 15-16.

Hubbard maintains his arrest amounted to nothing less than an abduction since it was based on an invalid warrant. (ECF No. 27-1 at 18). Hubbard testified that during the August 14, 2023, arrest Defendant Siniawa put the handcuffs on him too tightly causing swelling in his wrists. *Id.* at 8-9. He was handcuffed with his arms behind his back. *Id.* at 8. Hubbard stated he told Defendant Siniawa twice that the handcuffs were too tight. *Id.* at 9. Hubbard maintains Defendant Siniawa did nothing in response. *Id.* at 9. To Hubbard's knowledge, Defendant Lindabury was not present when the arrest occurred. *Id.* at 17.

Hubbard testified he was transported to the Washington County Detention Center ("WCDC") by Defendant Seratt. (ECF No. 27-1 at 7). While Defendant Seratt did not handcuff him, Hubbard maintains he told her before he got into the patrol vehicle and once during transport that the handcuffs were too tight. *Id.* at 7-8. Despite this, Hubbard says Defendant Seratt said and did nothing. *Id.* at 8. This is Hubbard's sole claim against Defendant Seratt. *Id.*

The handcuffs were removed when Hubbard arrived at the WCDC. (ECF No. 27-1 at 10). When the handcuffs were removed, Hubbard stated there were red lines across his wrists. *Id.* at 11. Hubbard did not, however, request medical attention while he was being booked in. *Id.* at 9. Instead, he made a medical request via the kiosk after he was placed in a pod, by the time he could be seen, the swelling was down. *Id.* Hubbard had no further problems with his wrists. *Id.*

5

at 10.

By affidavit, Defendant Siniawa states that he loosened Hubbard's handcuffs twice before he was placed in the patrol vehicle. (ECF No. 27-4 at 3). The first time occurred just after he had put the handcuffs on Hubbard and he complained they were too tight. *Id.* A few minutes later, Hubbard again complained the handcuffs were too tight causing Defendant Siniawa to loosened them a second time. *Id.* Defendant Siniawa's body camera footage has also been submitted as an exhibit. *Id.*

By affidavit, Defendant Seratt states Defendant Siniawa loosened Hubbard's handcuffs before he was placed in the patrol vehicle. (ECF No. 27-2 at 2). Defendant Seratt could "not recall Patrick Lewis Hubbard ever complaining to me while in my patrol car or in my presence at the [WCDC] that his handcuffs were causing him pain." *Id.* at 3. Defendant Seratt took nine photographs of Hubbard at the WCDC including of his wrists. *Id.* Defendant Seratt was also wearing a body camera and the video footage has been submitted as an exhibit. *Id.*

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.     DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of law and that he or she violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). Clearly, Defendants were acting under color of law. The remaining question is whether the Defendants violated Hubbard's constitutional rights.

Defendants maintain they did not violate Hubbard's constitutional rights. They have moved for summary judgment on the following grounds: (1) probable cause existed for the issuance of the arrest warrant and for the arrest; (2) no excessive force was used in connection with the handcuffing and Hubbard suffered no injury as a result; and (3) their actions did not violate clearly established rights of which a reasonable officer would have known, and they are entitled

to qualified immunity.

### A.     False Affidavit of Probable Cause Claim

In *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "the Supreme Court defined a limited exception to the presumptive validity of an affidavit supporting a search warrant application." *United States v. Ozar*, 50 F.3d 1440, 1143 (8th Cir. 1995).

> Under *Franks v. Delaware*, if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth that is the legal equivalent of intentional falsehood, a suppression court must set aside those statements and then review the remaining portions of the affidavits to see if what remains is sufficient to establish probable cause. Defendants bear the burden of proving the intentional or reckless inclusion of false statements in a warrant affidavit.

*Id.* (internal quotation marks and citation omitted).

This same analysis applies to § 1983 claims alleging a probable cause affidavit for an arrest warrant included false information or omitted truthful information. *Howe v. Gilpin*, 65 F.4th 975 (8th Cir. 2023); *see also Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (noting *Franks* had been extended to cover recklessly omitted information).

> Including a false statement in a warrant affidavit is a *Franks* violation when the defendant establishes by a preponderance of the evidence that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in a warrant affidavit, and (2) the false statement was necessary to the finding of probable cause.
>
> Omitting information violates *Franks* when 1) . . . facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) . . . the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.

*Estate of Nash*, 92 F.4th at 754 (internal quotation marks and citations omitted). Innocent mistakes or negligence do "not suffice to demonstrate reckless or deliberate falsehood." *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010).

"In a § 1983 case, the issues are whether 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' and, if deliberate falsehood is alleged, whether the affidavit is truthful, which 'means that the information put forth is believed or appropriately accepted by the affiant as true. Omissions and falsehoods that are immaterial or not supported by the record do not suffice.'" *Howe*, 65 F.4th at 980 (quoting *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009) (cleaned up)).

"In a warrant affidavit, the government need only show facts sufficient to support a finding of probable cause." *Ozar*, 50 F.3d at 1445 (quotation omitted). "Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing an individual arrested had committed an offense." *Williams v. City of Alexander*, 772 F.3d 1307, 1310 (8th Cir. 2014) (cleaned up).

In this case, Hubbard contends Defendant Lindabury's entire affidavit is false. He denies being present in the Wilson's apartment on October 6, 2016; he asserts his DNA could have been present on the orange juice container before October 6, 2016; he denies being arrested by the Russellville Police Department in the early morning hours of October 7, 2016; he denies he drove the stolen Mazda; and he contends his Sentencing Order in the laundromat case establishes he was incarcerated in the BCDC "on Oct[ober] 6, 2016 - 2019." (ECF No. 32 at 2-3).

Despite Hubbard's protestations to the contrary, there are no genuine issues of material fact as to whether the warrant affidavit contained any deliberate falsehoods. *See Fatemi v. White*, 775 F.3d 1022, 1040 (8th Cir. 2015) (explaining that to establish a genuine dispute of material fact, the non-movant "may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor.") (internal

9

quotations omitted). The summary warrant request and affidavit set forth the information regarding the residential burglary including the time it was discovered and the fact that a Mazda had been stolen. It described the recovery of the vehicle by the Russellville Police Department in the early morning hours of October 7, 2016. Hubbard was identified as being in possession of the vehicle when it was recovered and was arrested. Next, in late 2018, the DNA profile on the orange juice container was determined to be that of Hubbard. The date of October 6, 2016, in the laundromat Sentencing Order refers to the date of four of the five offenses Hubbard was sentenced on. It does nothing to establish that he was incarcerated in the BCDC at the time of the Wilson robbery or at the time the vehicle was recovered. Nothing, other than Hubbard's conclusory allegations, suggests any statements in the affidavit were false or that Defendant Lindabury intentionally or with reckless disregard include false statements.[4] *Howe*, 65 F.4th at 979 ("deliberate falsehood issue turns on the mental state of the affiant").

Defendant Lindabury is entitled to summary judgment on the false affidavit of probable cause claim against him.[5] Further, having found that the facts do not make out a constitutional violation, he is entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### B. False Arrest Claim

Hubbard's false arrest claim is derivative of his claim that the arrest warrant was issued on

---

[4] Although not contained in the affidavit, the Court notes the record reflects that Hubbard and the vehicle were identified as being present at the laundromat burglary later in the day on October 6, 2016. (ECF No. 27-6 at 2).
[5] This is the sole claim asserted against Defendant Lindabury.

false information and without probable cause. Arrest pursuant to a warrant is the preferred method for a Fourth Amendment seizure. *Steagald v. United States*, 451 U.S. 204, 212 (1981). The determination of probable cause by an independent magistrate is given great deference by reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Thus, the issuance of an arrest warrant establishes probable cause for an arrest. *See, e.g., Wood v. Wooten*, 986 F.3d 1079 (8th Cir. 2021). A false arrest claim can only proceed by undermining the warrant pursuant to the *Franks* analysis addressed above. Hubbard's failure to undermine the affidavit, therefore, precludes him from undermining the warrant.

Defendant Siniawa is entitled to summary judgment on the false arrest claim and to qualified immunity.

## C.    Excessive Force During Arrest Claim

Hubbard next claims Defendant Siniawa used excessive force against him when he handcuffed him. The Fourth Amendment's objective reasonableness standard governs a claim that an officer used excessive force "in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 388 (1980); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). The test for assessing whether the violation of the right to be free from excessive force under the Fourth Amendment is "whether the amount of force used was objectively unreasonable under the particular circumstances." *Vester v. Hallock*, 864 F.3d 884, 887 (8th Cir. 2017) (quotation marks omitted).

The Courts have recognized that to conduct an arrest, some degree of force is necessary. Therefore, the fact that force is used during an arrest does not *ipso facto* establish a Fourth-Amendment violation. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)

11

("Fourth Amendment jurisprudence has long recognized … the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (internal quotation marks and citation omitted).

"Handcuffing inevitably involves some use of force," *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006), and it will almost always result in some irritation, minor injury, or discomfort where the handcuffs are applied. *See Chambers v. Pennycock*, 641 F.3d 898, 907 (8th Cir. 2011) (citing *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002)). Courts have found the application of handcuffs, even when tightly secured, is not an unreasonable use of force. *See Crumley*, 324 F.3d at 1008; *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990.

While Hubbard maintains it did not occur, Defendant Siniawa's body camera audio and video footage, identified as Axon_Body_Video_2023_08_14_0627_X60A9848Z, verifies his claim that he loosened Hubbard's handcuffs twice before Hubbard was placed in the patrol car. (ECF No. 27-4 at 6; Defendants' Ex. 7 at 7:11:59 and 7:14:35).[6] Additionally, the lack of any injury other than the *de minimus* temporary swelling to his wrists that Hubbard maintains occurred, is verified by the photographs taken of Hubbard's hands and wrists by Defendant Seratt at the WCDC. (ECF No. 27-2 at 9-12). *See Crumley*, 324 F.3d at 1008 ("[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries.").

---

[6] Defendant Seratt's body camera audio and video footage, identified as Axon_Body_3_Video_2023_8_14_0702_X60A9685V, also verifies that Defendant Siniawa loosened the handcuffs just prior to Hubbard being placed in the patrol vehicle. (Defts' Ex. 7 at 7:14:31).

Defendant Siniawa is entitled to summary judgment on the excessive force claim and to qualified immunity.

### D. Failure to Intervene Claim

Hubbard's final claim is that Defendant Seratt failed to loosen the handcuffs despite his requests that she do so. Because Defendant Seratt did not handcuff Hubbard, this claim is properly considered to be a failure to intervene claim.[7] "To prevail on a claim of failure to intervene ..., [Hubbard] must prove an underlying constitutional violation." *Bloodworth v. Kansas City Bd. Of Police Comm'rs*, 89 F.4th 614, 628 (8th Cir. 2023) (citations omitted). "[A] failure-to-intervene claim may not prevail in the absence of a showing of excessive force." *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018); *see also McManemy v. Tierney*, 970 F.3d 1034, 1039 (8th Cir. 2020) ("To be sure, an officer who fails to prevent the *unconstitutional* use of *excessive* force by another officer may be held liable for violating the Fourth Amendment. But there is no duty to prevent the *constitutional* use of *reasonable* force.") (emphasis in original) (internal quotation marks and citations omitted). The claim against Defendant Seratt, therefore, fails.

Defendant Seratt is entitled to summary judgment on the failure to intervene claim and to qualified immunity.

### IV. CONCLUSION

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (ECF Nos. 27-29) be **GRANTED** and this case be **DISMISSED WITH PREJUDICE.**

---

[7] The audio from Defendant Seratt's body camera does not verify Hubbard's claim that he twice asked her to loosen the cuffs.

13

**Status of the Referral: The referral terminates upon the filing of this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of August 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE